# Richmond

SIMON ESTEP v. BLACKWOOD FUEL COMPANY, INCORPORATED.

November 25, 1946.

Record No. 3146.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Buchanan, JJ.

The opinion states the case.

*Robert B. Ely*, for the appellant.

*Fred B. Greear* and *Alva A. Hollon,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Simon Estep, a coal miner, employed by Blackwood Fuel Company, Incorporated, filed with the Industrial Commission a claim for compensation, alleging that he had lost the vision of his left eye by reason of its exposure to the brilliant light or "flash" occasioned by an electric welder which he was using about his employer's business. Both the hearing commissioner and the full Commission disallowed the claim, on the ground that the preponderance of the evidence showed that the claimant's impaired vision was due to natural causes—a diseased condition of the eye—and not to the alleged accident. From this award Estep has appealed, claiming in substance that the finding is contrary to the evidence and not supported by it.

In reviewing the award, on such an issue, we must remember that under the provisions of section 61 of the Workmen's Compensation Act (Acts 1918, ch. 400, p. 637, as amended; Michie's Code of 1942, sec. 1887(61)), the Commission's findings of fact, when based on evidence deemed by it to be credible, are conclusive and binding on us, and in the absence of fraud are not subject to review. *Carter* v. *Hercules Powder Co.,* 182 Va. 282, 288, 28 S. E. (2d) 736, 739, and cases there cited.

While the alleged injury is frequently referred to in the evidence and in the briefs as a "burn," there is no evidence, and indeed no claim, that the tissues of the eye or those of the surrounding area were in fact burned by the heat generated during the welding operation. The claim is that the vision of the eye was destroyed by reason of its exposure, on four occasions, to the brilliant light caused by the electric arc or "flash" which results from the welding process. On each of these occasions, Estep testified, he was using the shield with which he had been provided for the protection of his face and the upper portion of his body during the operation.

Estep, whose age is not disclosed by the record, testified that the first injury to his eye resulted from an exposure on June 25, 1945. He noticed during the operation of the appliance that his eyesight was "darkened to some extent," and that not until several hours thereafter was he able to see clearly. Later on during the day and night, he said, both eyes "hurt, smarted and burned," and he experienced the sensation that they had "sand in them." He lost no time from his work as the result of this incident and merely applied home remedies to his eyes.

On June 28 and July 2, he said, he had similar experiences from the welding operation. The result was more severe and the pain to his eyes was of longer duration. Again he applied home remedies. He suffered a fourth exposure and injury on July 25, he said.

In the meantime, on July 9, Estep said, he had reported these occurrences to one of his superiors at the office of his employer. This the employer denied, but that is not now material. At any rate, on July 17, Estep, of his own accord and at his own expense, visited Dr. C. H. Henderson, an eye, ear, nose and throat specialist, connected with the Norton General Hospital. After a careful examination of both eyes, Dr. Henderson found that Estep had suffered practically a total loss of vision in the left eye.

While Estep wore glasses which corrected an impaired vision in the right eye, he testified that until these exposures in June and July, 1945, he had experienced no trouble with the left eye.

Two local specialists, Drs. N. H. Short and R. W. Gover, were called as witnesses for the claimant. Each found from his examination that the claimant's vision in the left eye was gone. Both diagnosed the trouble which had destroyed the vision as choroid retinitis, and this, they thought, was due to the exposures complained of.

Both of these physicians found that the claimant had 33 1/3 per cent. vision in the right eye which had been corrected to normal by glasses. Neither thought that the impaired vision in the right eye was due to the exposures

complained of, but neither offered any explanation as to why only the left eye had been affected thereby.

Dr. Short had never previously treated a patient who had lost the sight of an eye due to such an exposure. Dr. Gover had previously seen a single patient with such a result due to such a cause.

Dr. Henderson, called as a witness for the employer, or insurance carrier, testified that he, too, found that the claimant had a remaining vision of 33 1/3 per cent. in the right eye which had been corrected by glasses. But he flatly disagreed with the diagnoses of Drs. Short and Gover that the claimant was suffering from choroid retinitis in the left eye. His examination, Dr. Henderson said, disclosed that the condition in the left eye was due to an occlusion or thrombosis in the center vein of the retina. This, he said, had destroyed the vision in that eye, and was due to arteriosclerosis and chronic nephritis. Dr. Henderson was of opinion that the loss of the vision in the claimant's left eye was due entirely to natural causes—a diseased condition—and was in no way attributable to the exposures complained of. There was evidence of the same diseased condition, he said, in the right eye.

The diagnosis of Dr. Henderson was confirmed by that of Dr. H. H. Howze, who on the same day gave the claimant a complete physical examination and who likewise found that he was suffering from arteriosclerosis and chronic nephritis.

Moreover, Dr. Henderson testified that he had treated "quite a few" patients who had experienced similar exposures to electric flashes or arcs, and that none of them had suffered a permanent disability as a result thereof. He said that while such exposure frequently was discomforting and painful, and sometimes resulted in a temporary loss of vision, this always cleared up within two or three days.

Again, Dr. Henderson said that there was nothing in the medical literature on the subject to show that the pathological condition which he found in the claimant's eye could

have been caused by the exposures to the electric flashes complained of.

 The opinions of the hearing commissioner and that of the full Commission show that this conflict in the medical testimony was carefully weighed and considered. The Commission saw fit to adopt the views of Drs. Henderson and Howze, and based thereon found as a fact that the claimant's loss of vision in the left eye was due not to the incidents complained of, but to a diseased condition of the eye itself. This conclusion and finding is binding on us, and accordingly the award is

*Affirmed.*