# Richmond

## Lula A. Mulkey v. Firth Brothers Iron Works.

November 22, 1948.

Record No. 3437.

Present, All the Justices.

*Charles H. Gordon*, for the appellant.

*John G. May, Jr.*, and *Robert Lewis Young*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On January 27, 1947, John M. Mulkey, aged fifty-nine, who was employed as a blacksmith by Firth Brothers Iron Works of Hampton, received a slight injury as the result of an accident arising out of and in the course of his employment. He was struck a light blow on the right knee by the fall of a dredge which he was lifting from the forge. He continued at work that day and until about 3:30 p. m. on the next day when he was sent by his employer to Dr. Willard P. Smith, a physician at Hampton. Dr. Smith found that the employee had sustained a slight bruise on the right knee. The skin was not broken and a subsequent X-ray disclosed that there were no fractured bones.

Because the employee was suffering from a purpuric rash on both lower limbs, he was sent by Dr. Smith to the Dixie Hospital at Hampton.

On January 30 Mulkey returned to his home at Christiansburg, where his wife resided.

On February 1 Mulkey called in Dr. T. H. Clarke of Christiansburg, who found him suffering from purpura hemorrhagica. In filling out the "Attending Physician's Report" to the Industrial Commission, Dr. Clarke stated that Mulkey was suffering from this disease at the time of the accident. He prescribed rest in bed, blood transfusions and vitamin C, which is the usual treatment for the disease.

From February 6 to 18, both inclusive, Mulkey was confined in the New Altamont Hospital at Christiansburg, under the care of Dr. Clarke. While there he was seen by Doctors S. J. Beeken, A. M. Showalter, R. H. Grubbs and George M. Caldwell, members of the local hospital staff. They concurred in Dr. Clarke's diagnosis of purpura hemorrhagica.

On February 18 Mulkey left the New Altamont Hospital in a rather bad physical condition and continued under Dr. Clarke's treatment at home.

On April 6 Dr. Clarke found Mulkey suffering from pneumonia. Later during the month he developed "a massive empyema" (pus in the pleural cavity) of the right lung, with "severe nephritis" (inflammation of the kidneys) and "myocarditis" (inflammation of the cardiac muscular tissue).

Upon the suggestion of Dr. Beeken, Mulkey was taken to the Lewis Gale Hospital at Roanoke on May 3, as this physician said, "with the hope of proving that possibly the empyema was the result of an infected thrombus originating in the infected legs." At the Lewis Gale Hospital no evidence of an infected thrombus was found.

On May 7 Dr. William L. Sibley, one of the members of the staff at the Lewis Gale Hospital, operated on Mulkey for drainage of the empyema. From that time on Mulkey continued to grow worse and died on May 12. Dr. Sibley

wrote on the death certificate that his death was due to "Bronchopneumonia, duration 1 mo."

The employer and insurance carrier paid compensation for disability of eight weeks, due to the injury to the knee. They declined to pay his widow compensation for his death, on the ground that there was no causal connection between the injury and the death. Thereupon the present proceeding was instituted before the Commission.

At the preliminary hearing held before Chairman Robinson, at Hampton, the following stipulation, as shown by the record, was entered into between counsel for the claimant and counsel for the insurance carrier:

"The carrier in this case admits that the employee in this case received an accident arising out of and in the course of his employment on January 27, 1947, that resulted in eight weeks disability, but denies that there is any causal relation between the accident and the death of the employee on May 12, 1947. Since the issue involved is a medical one, it is agreed that the attorney for the claimant will file any medical reports he cares to and the attorney for the carrier will, likewise, file any medical reports he cares to and the case will then be turned over to Doctor H. U. Stephenson, the Commission's Medical Examiner, for an opinion, his report to be considered a part of the record. Such reports are to be marked as exhibits."

Pursuant to this stipulation the various medical reports were filed with the Commission, and the file was delivered to Dr. Stephenson for an opinion.

It appears from these reports that the physicians at Christiansburg, including the family physician, Dr. Clarke, were of opinion that the injury which Mulkey had received to his knee, was a "contributing factor" to his death.

On the other hand, the physicians who attended and operated on Mulkey at the Lewis Gale Hospital in Roanoke, were in accord that there was no causal connection between the accidental injury and the death. In their opinion death was entirely due to natural causes.

Dr. T. Dewey Davis, a specialist in Richmond, and Dr.

Stephenson, the medical examiner of the Commission, both of whom reviewed the entire file in the case, were of like opinion that there was no causal connection between the employee's accidental injury and his death.

While the record contains no written report from Dr. Willard P. Smith of Hampton, the company physician who first saw Mulkey, Dr. Beeken stated in his report that Dr. Smith was not "disposed to connect" Mulkey's "terminal illness with his initial injury."

Upon this conflicting evidence Chairman Robinson rendered an opinion, holding that "the preponderance of the medical testimony was to the effect that there was no causal connection between the accident and death" of the employee. The full Commission affirmed.

The main assignment of error is, in substance, that the finding of the Commission is not supported by the evidence. Section 61 of the Workmen's Compensation Act (Michie's Code of 1942, section 1887(61) ) provides that an award of the Commission "shall be conclusive and binding as to all questions of fact." In applying this section we have repeatedly held that a finding of fact made by the Commission, based on evidence deemed by it to be credible, is conclusive and binding on us, and in the absence of fraud is not subject to review. See *Stump* v. *Norfolk Shipbuilding, etc., Corp.*, 187 Va. 932, 934, 935, 48 S. E. (2d) 209, 210, and cases there cited.

In *Estep* v. *Blackwood Fuel Co.*, 185 Va. 695, 699, 40 S. E. (2d) 181, 183, we held that a finding of the Commission upon conflicting medical testimony that a condition was due to disease rather than to an industrial accident is such a finding of fact as is binding on us. See also, *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 28 S. E. (2d) 736.

In the case before us there is, we think, ample credible evidence to support the finding that the claimant had not established the necessary causal connection between the industrial accident and the employee's death. Hence that finding is conclusive on appeal.

Complaint is also made of the action of the Commission in not considering and incorporating into the record the joint affidavit of the claimant, Mrs. Lula A. Mulkey, and Miss Frances Mulkey, made on December 6, 1947, and the statement of John M. Mulkey, the employee, taken by the insurance carrier on March 25, 1947.

These documents were excluded by the Commission on the ground that they did not come within the terms of the stipulation of counsel, set out above, under which the parties agreed that the case was to be heard and determined upon such "medical reports" as each might desire to file with the Commission.

Plainly, we think, the affidavit and statement are outside the terms of the stipulation, and were, therefore, properly excluded by the Commission in its consideration of the case.

Such stipulations are frequently entered into as a means of curtailing the record and are everywhere favored by the courts. *Harris* v. *Diamond Const. Co.*, 184 Va. 711, 722, 36 S. E. (2d) 573, 578.

But aside from this, we are satisfied that the exclusion of the documents, copies of which the Commission has certified to us, was not prejudicial to the case of the claimant-appellant. Neither the affidavit nor statement of the deceased employee throws any light directly on the pivotal question of the causal connection between the industrial accident and the employee's death. They are largely a recital of the details of the employee's treatment by the several physicians at the Christiansburg and Roanoke hospitals. The substance of these is already in the record.

The statement in the affidavit that "all the doctors advised us that his condition was unusual and caused by disruption of the blood stream as a direct result of his injuries at Firth Brothers Iron Works," adds little, if anything, to the claimant's case.

We need not stop to inquire whether such a statement in the *ex parte* affidavit was admissible under the Commission's rule which provides that "Hearsay testimony may be intro-

duced." The Commission thought that it was not. The statement is of little probative value on the issue of causal connection. It does not identify "all the doctors" referred to. We are not told whether they were among those who saw and treated the deceased employee at Christiansburg, or among those who operated on or treated him at the Roanoke hospital, or who they were.

Certainly, it adds nothing to the reports of the Christiansburg physicians which are in the record and are favorable to the claimant.

Nor do we think that a sweeping assertion of this character, which fails to identify any of the parties to whom it refers, is entitled to much, if any, weight as against the direct and positive statements of the Roanoke physicians that there was no causal connection between the industrial accident and the employee's death.

Moreover, the affidavit did not, of course, affect the subsequent reports of Dr. T. Dewey Davis of Richmond, and Dr. H. U. Stephenson, the medical examiner for the Commission, both of which were strongly relied on in the Commission's opinion.

We find no error in the award appealed from.

*Affirmed.*