# Richmond

## Ruby W. Johnson, et al. v. Capitol Hotel, Inc., Employer, and the Travelers Insurance Company, Insurer.

June 20, 1949.

Record No. 3528.

Present, All the Justices.

The opinion states the case.

*Emanuel Emroch* and *Marion W. Jones*, for the appellants.

*M. Wallace Moncure, Jr.*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The Industrial Commission refused compensation to the appellants on the ground that there was no causal connection between the death of their decedent, George W. Johnson, and the work he was doing for his employer. This appeal brings that ruling up for review.

Johnson was thirty-five years old and at the time of his death had been employed by Capitol Hotel, Inc., for about a year as house maintenance man to do general work in and about the hotel. Prior to his death he had apparently been in good health. He had been examined by physicians on four occasions between March, 1945, and November, 1947, and nothing abnormal was discovered. On March 1, 1948, the day of his death, he arrived at the hotel for work at 7:30 a. m. His wife testified that when he left home he told her he had never felt better in his life. Nothing is shown as to his activities between 7:30 a. m. and some time

after eight o'clock. Around the latter hour a load of sand, four tons, was dumped at the rear of the hotel in such way as to block the driveway. Johnson set about to clear it from the driveway. He used a six-pound shovel, which would hold about 25 pounds of wet sand. His method of work is not shown beyond the fact that one witness who was there three or four minutes stated he was standing on the south side of the pile, cutting it westwardly, and was working "not too fast, just medium."

The only definite evidence about the time Johnson was engaged in this work is that he had finished at 9:30 a. m. after moving about one-half of the sand. He then made no complaint of being in any distress and seemed to be in good spirits. Perhaps an hour later one of Johnson's helpers, Brown, found him in the boiler room. He said he was sick and sent Brown upstairs for Gresham, president of the hotel company. While Brown was gone another employee, Johnson's father-in-law, came in. He testified that Johnson told him he was shoveling sand and it got him down, "I believe I got a slight heart attack from it."

When Gresham came it was near eleven o'clock. A physician, Dr. Goodman, was called and arrived several minutes later. He found Johnson prostrate, cold and in a clammy sweat, suffering from pain in his chest radiating down into his arms, which twice the usual dose of narcotic did not relieve. Johnson died forty to fifty minutes later from what the doctor testified was a coronary occlusion or thrombosis as a natural cause. The coroner of the city of Richmond viewed the body and reported that the cause of death was "acute coronary occlusion."

Evidence on the claim for compensation was heard by Commissioner Nickels, who delivered an opinion on July 16, 1948, holding that the evidence failed to show an accidental death or any causal relation of the death to the alleged accident.

On review by the full Commission, October 14, 1948, in an opinion by Chairman Martin it was stated that in view of our decision in the case of *Derby* v. *Swift & Co.*, 188 Va.

336, 49 S. E. (2d) 417, decided September 8, 1948, this case would be compensable if there was any causal relation between the acute coronary occlusion which resulted in the death of the deceased and the effort of his work in shoveling the sand, either by way of aggravation or as the direct cause of the condition. The Commission stated that the evidence on causal relationship was conflicting and after careful consideration and some independent study it agreed with the hearing Commissioner that there was no causal relationship. Accordingly it held that "in view of the factual finding that there was no causal relationship of any sort between the acute coronary occlusion, which resulted in the death of the deceased, and the effort of the work he was performing, it cannot be said that death was caused by an accidental injury arising out of and in the course of the employment."

A finding of fact made by the Commission, based on evidence deemed by it to be credible, is conclusive and binding on us and in the absence of fraud is not subject to review. Workmen's Compensation Act, sec. 61 (Acts, 1918, ch. 400, p. 637, as amended; Code, 1942 (Michie), sec. 1887(61) ); *Stump* v. *Norfolk Shipbuilding Corp.*, 187 Va. 932, 48 S. E. (2d) 209.

A finding of the Commission upon conflicting medical testimony that a condition or death was due to a disease rather than to an industrial accident is such a finding of fact. *Estep* v. *Blackwood Fuel Co.*, 185 Va. 695, 699, 40 S. E. (2d) 181, 183; *Mulkey* v. *Firth Bros. Iron Works*, 188 Va. 451, 455, 50 S. E. (2d) 404, 406.

Here there was conflicting medical testimony representing opposing views as to whether the work of shoveling sand had anything to do with the onset of the coronary occlusion which resulted in the death of the decedent.

Dr. Camp, a heart specialist of Richmond, listened to the testimony before the hearing Commissioner and then testified for the appellants that in his opinion the effort of shoveling the sand was the proximate or a contributing cause of the coronary occlusion.

On the other hand, Dr. Goodman, who attended the deceased at the hotel and who said he talked to him a good while before he died, testified that the occlusion was of natural cause; that most people who die of it do so while at rest and he did not consider the work of shoveling sand of any importance in making his diagnosis.

Dr. Grigg, coroner of the city of Richmond and of Chesterfield county, testified that in his opinion the coronary occlusion which resulted in the death of the deceased was due to a generalized hardening of the arteries and that the effort put forth in shoveling the sand was not connected in any way with the occlusion either as the proximate cause or by way of aggravation. Dr. Grigg had examined the deceased several years before and then found that he had blood pressure above normal. He also examined his body after death during embalming and found the arteries of the neck to be hard and rigid and the inner surface to be rough rather than smooth and glistening, the normal condition. He said this was evidence of similar changes in the coronary arteries and that he could feel or palpate the hardened arteries of the arms and behind the knees; they were pipe-stemmed and had characteristic firmness. His opinion was that the condition of the deceased was of long standing and that the occlusion was the product of time rather than of temperature or type of work. He thought the record of his decreasing blood pressure was evidence of a failing heart, which had begun to pocket water in his body, accounting for an increase of from 25 to 30 pounds in decedent's weight. He also testified that the deceased had edema of his extremities when he viewed him after death.

There is a difference of opinion among medical men as to the relation of effort to the onset of coronary occlusion. In appellants' brief is an extensive quotation from an article by Dr. Boas, published in the January, 1942, issue of *American Heart Journal*, supporting the view expressed by Dr. Camp in this·case.

The opinions of Dr. Grigg and Dr. Goodman to the

contrary, which were accepted by the Commission, are supported by authority at least as eminent. These are quoted from at length in a concurring opinion filed by Commissioner Nickels. One is a paper by Doctors Master, Dack and Jaffe, published in the July, 1940, issue of *Industrial Medicine*. They assert that confusion on the subject has arisen because of failure to distinguish angina pectoris and coronary insufficiency from coronary occlusion. They report investigation of 1,620 attacks of coronary occlusion, resulting in findings that 52.5% of the attacks occurred during sleep, or rest, and only 2% were associated with unusual activity. They reach the conclusion that effort is not a factor in the onset of coronary occlusion.

The other authority quoted by Commissioner Nickels is an article by Dr. Hutcheson of Richmond in the November, 1945, issue of the *Virginia Medical Monthly*. He states that it is generally accepted that thrombosis does not take place in coronary arteries that are normal. He disagrees with those who contend that physical or emotional strain is an important factor in the production of coronary occlusion and asserts that its onset is too well distributed to be connected with any particular activity or circumstance of life, and any apparent relationship between coronary occlusion and bodily activity is purely coincidental. Coronary occlusion is, he says, the climax of slowly progressive arterial disease.

Obviously the question so debated by the medical experts is not to be settled by judicial fiat. The unwisdom of an attempt by those uninitiated into the mysteries to choose between conflicting expert medical opinions is apparent. The issue is one of fact. When it is so determined by the Commission and its finding is supported by competent, credible evidence, its decision is conclusive. *Liberty Mut. Ins. Co.* v. *Industrial Acci. Comm.*, 73 Cal. App. (2d) 555, 166 P. (2d) 908; *Mulkey* v. *Firth Bros. Iron Works*, *supra*.

In workmen's compensation cases, as in others, the plaintiff must prove his case. As an essential part of it he must

prove causal connection between the employment and the injury, and his evidence must go beyond mere conjecture. *Hopson* v. *Hungerford Coal Co.*, 187 Va. 299, 306, 46 S. E. (2d) 392, 395.

The Commission has found that the appellants here have not carried that burden. To reverse its decision would require us to say as matter of law that the Commission should have believed one of the doctors instead of the other two. There is no warrant in this record for doing so. The award is sufficiently supported by evidence deemed by the Commission to be credible and it is, therefore,

*Affirmed.*