## Staunton

JAMES T. DUNIVAN AND COAL OPERATORS CASUALTY COMPANY V. REBECCA HUNTER, LLOYD LEE COLEMAN, MARTHA BELL COLEMAN AND WILLIAM BRYCE COLEMAN.

September 14, 1955.

Record No. 4393.

Present, All the Justices.

The opinion states the case.

*Bowles, Anderson & Boyd* and *J. Calvitt Clarke, Jr.*, for the appellants.

*Nicholas A. Spinella, Ashby B. Allen* and *Sidney L. Berz*, for the appellees.

MILLER, J., delivered the opinion of the court.

On January 8, 1954, Charles L. Coleman, a negro youth nineteen years of age and a resident of Fredericks Hall, Virginia, was accidently killed while working at a sawmill in Maryland. He was in the employ of James T. Dunivan of Mineral, Virginia, for whom

he had been working for six months or more. It is conceded that his death arose out of and in the course of his employment and that his average weekly wage was $37.32.

A claim against James T. Dunivan and Coal Operators Casualty Company, his insurance carrier, for compensation benefits under the Workman's Compensation Act was filed with the Industrial Commission of Virginia. Those who sought compensation and asserted that they were wholly dependent upon deceased, were his sisters and brothers; *i.e.*, Rebecca Hunter, age thirty-three, Martha Bell Coleman, age sixteen, Lloyd Lee Coleman, age thirteen, and William Bryce Coleman, age seven. Before offering any evidence to sustain their application, counsel for claimants conceded that Rebecca Hunter, the wife of Sam Hunter, was not dependent upon deceased, and at the hearing no evidence was tendered, nor claim made that the youngest brother, William Bryce Coleman, was dependent upon decedent. Upon the evidence introduced on behalf of the other two infant claimants, Lloyd Lee and Martha Bell Coleman, the hearing commissioner held in a written opinion that they were "wholly dependent upon deceased at the time of his death and had been for more than three months prior thereto." He directed that an award be entered at the rate of $22.63 a week beginning January 9, 1954, continuing for three hundred weeks for their benefit, that an attorney's fee in the sum of $400 be deducted from the award, and that defendants pay burial expenses not to exceed $300. Upon review by the full Commission, the findings of fact and conclusions of law made by the hearing commissioner were adopted. His award was affirmed, and the attorney's fee was increased to $600. From this award an appeal was granted the employer, James T. Dunivan, and his insurance carrier.

The sole question presented for determination is whether or not the Commission erred when it found that Lloyd Lee Coleman and Martha Bell Coleman were totally dependent upon deceased.

Coleman's mother died about six or seven years ago, and shortly thereafter his father remarried and moved to Pennsylvania. At that time, deceased, Martha Bell Coleman and Lloyd Lee Coleman were taken in charge by their older sister, Rebecca Hunter, and her husband, Sam Hunter, and thereafter they continued to make their home with this sister and her husband. William Bryce Coleman went to live with Elizabeth Butler, a relative, and she has continued to care for him. Since the father's abandonment of his children

several years ago, his contributions to them have been negligible and of no material help.

The three children who went to live in the Hunter home became a part of that family and were supported by Sam Hunter, and cared for by his wife as if they were their children. Hunter, his wife and seven children, the oldest of whom is now about seventeen years of age, and the three Coleman children, made up the household. They all lived together as one family until decedent's death, and since his death his younger sister and brother have continued to live in Hunter's home and are supported by him.

Hunter was the sole contributer to the support of this household until deceased became old enough to work. When he went to work he was about sixteen years of age, and since that time he contributed to the maintenance and support of the family.

A determination of whether or not the two infant claimants were wholly dependent upon deceased at the time of his death requires an appraisal of the evidence bearing upon their status in the household and the contributions made by deceased and Sam Hunter, by which the twelve members of the family were supported.

For several months prior to decedent's death, he worked four days each week at the sawmill in Maryland, and the remainder of each week he spent at Hunter's home in Virginia. During this time he made a contribution of $18 per week, which he paid to Rebecca Hunter, and she used it on household expenses. The evidence also shows that throughout this period of time Sam Hunter earned the sum of $50 per week out of which he retained $5 for his personal use. The balance of $45 was turned over by him to his wife each week and used by her, along with deceased's contribution, for the payment of rent, and for the food, clothing and other household expenses of the family. The expenses incurred by Coleman for food and lodging for the four days and three nights that he was in Maryland each week and his clothing bills were paid by him out of what he retained of his wages.

The testimony of Sam Hunter was to the effect that when the three children came to live with him, he supported them but that deceased when old enough to go to work, made payments to Rebecca Hunter which were used toward the support of the entire family. When he obtained regular employment, his weekly contributions averaged $18, which he continued to turn over to his older sister, and she used them toward the support of the family.

After having testified what sum deceased contributed each week, he was asked the following question and gave the answer indicated:

"Q. That was for the support of everybody, too?

"A. Yes, sir."

The testimony of Rebecca Hunter was of like effect. The questions propounded to her and her answers show that deceased's weekly contribution of $18 was commingled with the $45 contributed by her husband, and this weekly fund of $63 was used for the support of the entire household. This is unmistakably indicated by the following questions and answers:

"Q. Didn't you take the money he gave you plus what your husband gave you?

"A. Yes, sir, put it all together.

"Q. Did the family have any income except what your brother gave you and what your husband made?

"A. No, sir.

     \*     \*     \*     \*     \*     \*     \*

"Q. You would take that cash and spend for his brothers and sisters and your own children and everybody down there?

"A. Yes, sir."

The testimony of others in the neighborhood was to the effect that deceased took care of, supported, or contributed to the support of his brother and sister. These witnesses had either sold to him or seen him making purchases of groceries and clothing and had heard him state at times that he was taking care of his brother and sister. But they were in no position to know that the weekly contributions made by him and handed to his sister were actually commingled and used, along with the funds contributed by Sam Hunter, toward the support of each and all members of the household. It nowhere appears from the testimony of any witness that there was any intention to segregate or an actual allotment of the contributions made by either deceased or Sam Hunter for any particular members of the household. On the contrary, the testimony from those who were in a position to know conclusively shows that the contributions made by both were commingled and used alike for the support of the family.

Any attempt to say that Coleman's sister and brother were wholly dependent upon him would be at odds with the original basis on

which the three were taken into Hunter's family. It would also be at variance with the testimony of Sam Hunter and his wife as to how the family of twelve was supported and how they used the total family income of $63 a week. Nor is there any evidence to indicate that deceased's weekly contribution, or any part of it, was made with intent that it be used for the support of himself and his brother and sister to the exclusion of other members of the family. On the contrary, the circumstances under which the three children went to live in Sam Hunter's home, and the manner in which they were cared for and supported throughout the years until decedent's death, point to the certain conclusion that his contributions were used toward the support of all twelve members of the family.

Section 65-62, Code of 1950, *inter alia*, provides that: "If the employee leaves dependents only partly dependent upon his earning for support at the time of injury, the weekly compensation to be paid * * * shall equal the same proportion of the weekly payments for the benefit of persons wholly dependent as the extent of partial dependency bears to total dependency."

By § 65-63, Code of 1950, those who are conclusively presumed to be wholly dependent upon a deceased employee are listed. Generally speaking, they are a wife upon a husband; a husband upon a wife, if he be incapable of self-support; a child upon a parent, and a parent in destitute circumstances upon a child. Persons who are within the classification fixed by this section are conclusively presumed to be dependent upon the employee, and no proof of factual dependency is required. *Commonwealth* v. *McGuire*, 188 Va. 444, 50 S. E. (2d) 284; *Virginia Electric & Power Co.* v. *Place*, 150 Va. 562, 143 S. E. 756.

As there is no statutory presumption that a brother or sister is dependent upon another brother or sister, we must look elsewhere to determine if and how such dependency may arise.

Under § 65-64, Code of 1950, factual dependency is recognized, and it may be established to be "in whole or in part." That section reads as follows:

"In all other cases questions of dependency in whole or in part shall be determined in accordance with the facts as the facts are at the time of the accident; but no allowance shall be made for any payment made in lieu of board and lodging or services and no compensation shall be allowed unless the dependency existed for a period of three months or more prior to the accident."

Here the evidence shows that after the death of the children's mother and their abandonment by their father, Sam Hunter assumed the obligation of their support. It was then that they were taken into his home and made members of his family. For years thereafter his wife cared for them and he alone supported them. When deceased went to work, he recognized his moral obligation to his benefactors and undertook to help defray the expenses of the household. He did this by making regular payments to his sister which were used along with funds earned by her husband to provide for the entire family. The only change that came about when deceased was able to contribute to the household was that the family unit enjoyed those additional funds. Yet from a factual standpoint, his brother and sister continued to occupy their same position in the home and looked to, relied upon, and were dependent for support upon Sam Hunter as well as upon deceased.

"It will be observed that section 65-64 does not define dependency or specify the indicia of that status. In applying this section we have said that 'From the proof adduced upon the hearing, it is the province of the Commission to find as a fact whether the particular claimant is entitled to compensation, and to determine the amount thereof.' " *Glassco v. Glassco,* 195 Va. 239, 242, 77 S. E. (2d) 843.

"From what has been said it follows that we are of the opinion that the second class of cases created by the statute rests neither upon relationship nor presumption, but wholly upon the facts as they exist at the time of the death of the employee." *Virginia Electric & Power Co.* v. *Place, supra,* at page 569. *Commonwealth* v. *McGuire, supra,* at page 448.

Had Hunter, instead of his wife, been the blood relative of these infant claimants, it would hardly have been contended that they were not partially dependent upon him. Yet as they do not fall within the classification of § 65-63, their dependency rests neither upon relationship nor presumption, but upon their actual status as shown by the facts and circumstances in evidence.

It is significant that after Coleman's death, Sam Hunter resumed the entire burden, and the eleven members of the family continued to live as they had before deceased obtained employment and all are again wholly dependent upon Sam Hunter.

On principle the opinion of Hearing Commissioner Martin in *Hiner* v. *Shuster,* 31 O. I. C. 321, 322, affirmed by the full Commission in 31 O. I. C. 445, is in point. There it is said:

"The record discloses that the entire family, including the de-

ceased and an older sister, lived together in the home. The mother earned $20.00 a week, the father earned $40.00 a week, and the deceased contributed $10.00 a week to the family income. The older sister worked but made no contribution for the support of the family. This total weekly income of $70.00 was used for the support of the family.

"Since the contribution of deceased was one-seventh of the family income, the finding is made that claimants were one-seventh dependent upon deceased for their support. * * *"

We fail to find any evidence of probative value to show that the two claimants were wholly dependent upon deceased. The funds contributed by him and by Sam Hunter were commingled and recognized as family income and devoted to the same purpose; *i.e.,* maintenance and support of the entire household.

As deceased's weekly contribution over the three months or more prior to his death was $18, or two-sevenths of the family income of $63, and Hunter's contribution, $45 or five-sevenths, of that income, claimants' dependency upon decedent was two-sevenths instead of total.

For the reasons stated the order of the Commission is reversed, this cause remanded for the entry of an award in accord with the views herein stated, and for the allowance of such counsel fees and burial expenses as the Commission may deem right and proper.

*Reversed and remanded.*

HUDGINS, C.J., SPRATLEY and WHITTLE, JJ., dissenting.

WHITTLE, J., dissenting.

I cannot agree with the majority opinion. I am in full accord with the result reached in the unanimous opinion of the Commission which was based upon credible evidence and should not be disturbed. § 65-94, Virginia Code, 1950.

It is plainly shown that the claimants were totally dependent upon the deceased for their support. This total dependency continued over a period of approximately five years prior to the death of the deceased. The evidence shows that deceased had definitely assumed the responsibility of providing for the full support of his infant brother and sister (the claimants), and that he had manfully fulfilled his obligation.

The fact that Mrs. Hunter and her husband took these infant children into their home after the death of the mother and cared for

them until the deceased was old enough to work has no bearing upon the legal question involved; nor has the fact that they resumed the care of claimants after deceased was killed. The further fact that Mrs. Hunter was a sister of the deceased and the two claimants is of no legal significance.

What is legally significant is the fact that eleven people were supported full time and that the deceased was supported half time out of a total sum of $63.00 per week, $45.00 of which was contributed by Hunter and $18.00 by the deceased. The mathematics of the situation demonstrate that if it takes $63 to support eleven and one-half people, $13.70 will support two and one-half. Therefore, as the deceased was contributing $18 per week for the half time support of himself and the full time support of the two claimants he was contributing $4.30 more than his share.

If the matter of relationship is left out of the picture, it cannot be argued that the claimants were not totally dependent upon the deceased. If when the deceased first accepted employment he had moved the claimants to the home of a complete stranger who had a comparable family to that of the Hunters, and had contracted with the stranger to provide such support as the Hunters provided for the sum of $18 per week; and if it were established that this was the full support received by the claimants, could it be argued that they were not totally dependent upon the deceased? I think not.

The Commission found as a fact that just such an arrangement was made with the Hunters when the deceased accepted his employment. "A finding of fact made by the Commission, based on evidence deemed by it to be credible, is conclusive and binding on us and in the absence of fraud is not subject to review." *Johnson* v. *Capitol Hotel, Inc.*, 189 Va. 585, 588, 54 S. E. (2d) 106; *Stump* v. *Norfolk Shipbuilding Corp.*, 187 Va. 932, 48 S. E. (2d) 209; *Mulkey* v. *Firth Bros. Iron Wks.*, 188 Va. 451, 50 S. E. (2d) 404; *Hubbard* v. *Dan Valley Mills*, 182 Va. 223, 28 S. E. (2d) 723; *Walsh Construction Co.* v. *London*, 195 Va. 810, 816, 80 S. E. (2d) 524; *Rogers* v. *Williams*, 196 Va. 39, 42, 82 S. E. (2d) 601; *Foust Coal Co.* v. *Messer*, 195 Va. 762, 766, 80 S. E. (2d) 533.

We have held many times that this remedial legislation should be liberally construed in favor of the claimant. In my view it takes no liberal construction to sustain the unanimous award of the Commission in this instance.

HUDGINS, C.J., and SPRATLEY, J., join in this dissent.