## Richmond

RUTH S. WILLIAMS v. FRED B. FUQUA, EMPLOYER, AND LIBERTY
MUTUAL INSURANCE COMPANY.

January 20, 1958.

Record No. 4761.

Present, All the Justices.

The opinion states the case.

*Basil G. Watkins* (*L. Bradford Waters*, on brief), for the appellant.

*James R. Caskie* and *William W. Sweeney* (*Caskie, Frost, Davidson
& Watts*, on brief), for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This appeal brings up for review an award of the Industrial
Commission refusing compensation to appellant on the ground that

there was no causal connection between the death of her husband, John C. Williams, and the work he was doing for his employer.

Williams, 59 years old, was employed as a brickmason by Fred B. Fuqua. On May 7, 1956, while engaged in pulling a board, attached to a rope, up to a scaffold, he suffered a painful injury to his back. The board, 12 to 15 feet long, was made of oak and weighed approximately 30 pounds. He made no complaint of his injury on the above date, and continued to perform his work as usual for the remainder of the day. On the next day, May 8, he informed his fellow employees and his employer that his back was hurting him and that the pain was a result of his accident the previous day. He then consulted Dr. John Devine for treatment of the strain to his back. On May 11, Dr. Devine had Williams enter a hospital for treatment of his back injury. On May 12, five days after the date of his injury, Williams suffered a coronary occlusion. Dr. Devine, a surgeon and general practitioner, then called in Dr. Robert L. Brickhouse, who practiced internal medicine including cardiology, to treat his patient. Dr. Brickhouse consulted with Dr. W. S. Hooten, who specialized in cardiology; but Dr. Hooten did not treat Williams. Williams remained at the hospital until June 13, when he was allowed to return to his home for convalescence. On June 14, he died. His death certificate, issued after an autopsy was performed, listed the cause of death as acute myocardial infarction.

Williams, in a written statement of his injury, dated May 30, 1956, stated that "During the time from when I hurt my back on 5-7-56, until the stroke on 5-12-56, I had no pains in any other part of my body at all but my back, and I had no spells of weakness or dizziness nor feeling of nausea, nor shortness of breath, and no other ailments of any kind. I felt well completely except for my back. * * *"

Evidence of the claim of Mrs. Williams for compensation was heard by Commissioner Evans. At that hearing, Dr. Brickhouse and Dr. Hooten, the consultant, testified that it was their considered opinion that the strain suffered by Williams in lifting the board on May 7, brought about the heart attack on May 12, which resulted in his death.

Dr. R. Earle Glendy, a cardiologist, was furnished a chronological history of the events leading up to employee's death, the clinical and pathological reports, and a report of the Veterans Administration Hospital. The hospital report showed that Williams, prior to his

death, was receiving permanent total disability benefits based upon nonservice-connected conditions defined as: "Valvular heart disease, myocardial damage, auricular fibrillation, Class III; Hyperthyroidism; Adenoma of the thyroid, operated, cured; Pterygium, left."

Dr. Glendy made a written report in which he expressed, in part, the following opinion:

"After a careful review of your investigation and the clinical reports attached it is my opinion that the *proximate* cause of this man's death was myocardial infarction due to severe coronary *atherosclerosis*, and that the etiology of the heart condition is in no way related to the back condition for obvious reasons evident in the pathological protocol. Coronary *atherosclerosis* is an insidious, slowly developing condition unrelated to trauma or strain.

"Now the question as to whether the 'slight' exertion of lifting the board to the scaffold had any relation to the heart condition and the subsequent heart attack I would say first that it had no etiological relationship to the *heart condition*, which despite his denial of symptoms, undoubtedly existed before the strain occurred. The next question to be answered is: Can a strain precipitate thrombosis in a coronary vessel that is already *atherosclerotic?* In answer to this I quote directly from a chapter on Trauma and Heart Disease by Dr. Paul D. White and myself from Trauma and Disease edited by Brahdy and Kahn * * *. 'Probably yes, in infrequent cases. Certainly in the large majority of instances sudden occlusion of a coronary artery takes place when the patient is at rest, often at night, when the slowing of the blood stream may play a role. Occasionally, however, there appears to be a direct relationship between trauma and coronary thrombosis. A few minutes, a few hours, or a day or two after some fall or blow, or other physical strain typical coronary occlusion may set in. Of course it may be argued that this is merely a coincidence, but it has happened with enough frequency to make coincidence unlikely in the majority of such cases. A long time interval (in this case 5 days) between the trauma (or strain) and the appearance of the coronary thrombosis should rule out their relationship; arbitrarily one may set this interval at several days, certainly not more than one week; however, the interval may be extended to two weeks in cases in which coronary thrombosis develops following a severe injury, which confines the patient to bed for many days —but even in such cases, coronary thrombosis that appears more than two weeks after the injury had better be regarded as a coincidence.

The way in which coronary thrombosis is precipitated in a diseased vessel by trauma (or strain) is not known; perhaps an atheromatous abscess is ruptured, or a calsified plaque is broken.'

"In the light of the above quote, which is authoritative, I believe, I would regard the relationship between this man's physical strain of lifting the board to the scaffold and his coronary thrombosis as possible but tenuous, because his initial complaint did not appear to be cardiac in origin but rather related to a back strain. Furthermore, since he was not confined to bed after admission to the hospital it is unlikely that a heart condition (i.e. coronary thrombosis) was even considered until after his severe attack on May 12, 1956, five days after the alleged strain. Accordingly I am more inclined to feel that the coronary attack here was coincidental rather than related to or precipitated by the strain of lifting the board to the scaffold. However, the matter of aggravation of angina pectoris and other manifestations of coronary disease by trauma and mental and physical strain remains somewhat controversial and not always easy of interpretation."

Commissioner Evans, on account of the conflict in the medical evidence, referred the file in the case to Dr. L. W. Hulley, Jr., Medical Advisor to the Industrial Commission, for his opinion as to the relationship between the injury of May 7, and the fatal heart attack. Dr. Hulley came to the conclusion that there was no causal relation. It also was based on his studies and findings of a large number of outstanding experts in the field of cardiology. Each of the above named doctors agreed that physicians are not in agreement regarding the production of coronary occlusion or thrombosis, and their relationship to strain resulting from physical exertion.

Commissioner Evans, in his written opinion, after reciting the evidence and quoting extracts from a number of medical authorities, reached the conclusion that: "A preponderance of the medical evidence refutes the claim of causal relationship between the back strain suffered by the employee on May 7 and the heart attack of May 12," and denied the claim for compensation.

On review by the full Commission on January 24, 1957, in an opinion by Chairman Crenshaw, (Robinson, Commissioner designate, dissenting) it was stated that "a careful review of the evidence and further recourse to medical literature," led it to the same conclusion as that reached by Commissioner Evans. It was "found as a fact that the death of John C. Williams was not a result, either directly,

or by way of aggravation, of the accidental back strain sustained on May 7, 1956." The Commission cited the decision in *Johnson* v. *Capitol Hotel*, 189 Va. 585, 54 S. E. 2d 106, as peculiarly pertinent.

An order was entered affirming the award of Commissioner Evans, and in addition thereto directing an award of compensation for temporary total incapacity of the said John C. Williams, beginning May 10, 1956, and continuing to June 14, 1956, less the statutory seven-day waiting period, with costs of medical and hospital care rendered toward curing the back strain.

Appellant contends that the Commission erred in finding as a fact that there was no causal connection between the injury and the subsequent heart attack of Williams. She claims that the Commission erred in considering unsworn statements, textbooks and other writings "not properly evidenced" in the proceeding, and failed to give proper weight to the evidence of Dr. Brickhouse, the attending physician of the employee.

The several contentions of the appellant are answered by the statutes involved and what we have said in recent decisions.

"A finding of fact made by the Commission, based on evidence deemed by it to be credible, is conclusive and binding on us and in the absence of fraud is not subject to review. * * * (Code, § 65-94, and cases cited thereunder).

"A finding of the Commission upon conflicting medical testimony that a condition or death was due to a disease rather than to an industrial accident is such a finding of fact. *Estep* v. *Blackwood Fuel Co.*, 185 Va. 695, 699, 40 S. E. 2d 181, 183; *Mulkey* v. *Firth Bros. Iron Works*, 188 Va. 451, 455, 50 S. E. 2d 404, 406." *Johnson* v. *Capitol Hotel, supra*, at page 588.

There is nothing incredible about the facts in evidence. There is simply a conflict in medical testimony representing opposing views as to whether the back strain suffered by Williams had anything to do with the onset of the coronary occlusion or thrombosis which resulted in his death. There is a difference of opinion among medical experts as to the relation of effort to the onset of a coronary occlusion. Here, the views expressed by Doctors Glendy and Hulley are supported by the majority of outstanding medical experts in the field of cardiology.

An investigation of thousands of attacks of coronary occlusion has led a majority of the physicians in the field of cardiology to reach the conclusion that coronary occlusion is the end result of the arterio-

sclerotic process and is unrelated to external events. Heart Disease and Industry, by Meyer Texon, M.D., 1954, page 283 *et seq.*

As said by Mr. Justice Buchanan, "Obviously the question so debated by the medical experts is not to be settled by judicial fiat. The unwisdom of an attempt by those uninitiated into the mysteries to choose between conflicting expert medical opinions is apparent. The issue is one of fact. When it is so determined by the Commission and its finding is supported by competent, credible evidence, its decision is conclusive." *Johnson* v. *Capitol Hotel, supra,* at page 590.

We find no merit in the contention that the Commission erred in admitting and considering unsworn statements of the medical experts and extracts from medical journals. Here, the written opinions of physicians were submitted by both parties to the action. The record does not show that appellant objected to the introduction of testimony at any stage in this proceeding, or asked the privilege of cross-examining Doctors Glendy or Hulley. *The Pocahontas Corp.* v. *Richardson,* 186 Va. 367, 369, 42 S. E. 2d 260; *Walsh Construction Co.* v. *London,* 195 Va. 810, 817, 80 S. E. 2d 524.

The Industrial Commission is not governed in its decisions by common law rules of evidence, and we have held that hearsay statements are properly admissible in evidence before it. The Commission has the discretion to give probative weight to hearsay statements in arriving at its finding of facts. It is the sole tribunal provided to ascertain the facts in cases of this character, and it is not for us to determine the weight of the evidence. Code, §§ 65-16 and 65-94; Rule 1, Rules of the Industrial Commission; *American Furniture Co.* v. *Graves,* 141 Va. 1, 15, 16, 126 S. E. 213; *Walsh Construction Co.* v. *London, supra; Johnson* v. *Capitol Hotel, supra.* Under the broad provisions of the Workmen's Compensation Act, it is authorized to consult medical treatises. *Liberty Mut. Ins. Co.* v. *Money,* 174 Va. 50, 57, 4 S. E. 2d 739.

While we have said in a number of cases that great weight should be given to the testimony of the attending physician, his opinion is not binding upon the Commission. The probative weight to be given his evidence is for the Commission to determine, and if it is doubtful and in conflict with other medical evidence, the Commission is free to adopt that which is most consistent with reason and justice. *Baltimore* v. *Benedict Coal Corp.,* 182 Va. 446, 453, 29 S. E. 2d 234.

The facts in the case of *Ellis* v. *Commonwealth,* 182 Va. 293, 28 S. E. 2d 730, relied upon by appellant, are somewhat different from

those of the case under review. There two attending physicians testified positively in favor of claimant, with one non-attending physician expressing a theoretical view to the contrary. The latter admitted in his report, which was somewhat speculative and conjectural, that he lacked certain material information about the case upon which to base an accurate opinion.

The facts and circumstances of the case before us are strikingly similar to those in *Johnson* v. *Capitol Hotel*, 189 Va., *supra*, and the law there applied controls here. There the claimant contended that the effort of the employee in shoveling sand was the proximate or a proximate cause of the coronary occlusion suffered by the employee. The employee had suffered for a long time from a diseased heart. There was a conflict in the medical evidence as to whether the work of shoveling sand had anything to do with the coronary occlusion. The Industrial Commission found that claimants had failed to carry the burden of proving a causal connection, and we affirmed.

The only conflict in the case here is between the opinions of medical experts. The majority of the Commission has accepted the conclusion of those who said there was no causal connection between Williams' death and the back injury he sustained. That issue was one of fact and the finding is binding on us. The award of the Commission is, therefore,

*Affirmed.*