# Richmond

## THE POCAHONTAS CORPORATION v. R. D. RICHARDSON.

April 21, 1947.

Record No. 3201.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Bowen & Gillespie*, for the appellant.

*Hillis Townsend* and *Gordon B. Ambler*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

The principal question presented in this record is whether the evidence justified the Industrial Commission in awarding R. D. Richardson compensation for an occupational disease.

It is conceded that the malady which disabled claimant had been diagnosed as silicosis. The question is whether the evidence is sufficient to support the conclusion of the majority of the Commission (Commissioner Nickels dissented), to the effect that the disease was not susceptible of diagnosis as silicosis on July 1, 1944, the effective date of the statute.

Subsection 2i of Code, sec. 1887 (Workmen's Compensation Act) imposes a very difficult burden upon an employee who bases his claim for compensation on an occupational disease. However, the language expressing the legislative intent is clear and unambiguous. This fact imposes a mandatory duty upon the court to apply the statute as written, notwithstanding the hardship to the claimant.

In *Noel* v. *Oakwood Smokeless Coal Corp.*, *ante*, p. 97, 41 S. E. (2d) 454, and in *Richmond* v. *Collins*, *ante*, p. 298, 42 S. E. (2d) 259, opinion announced at this session of the court, we held that before an employee is entitled to compensation for an occupational disease, he must prove, first, that his malady has developed to such an extent that it has been or can be diagnosed as an occupational disease; and, second, that it was not susceptible of diagnosis as such disease on July 1, 1944.

Claimant, for more than twenty years, as a motorman in the coal mine, has been exposed to silica in the atmosphere he breathed to a greater degree than the general public. Since 1941 sand dust in the atmosphere in which he was compelled to breathe in the performance of his duties has been somewhat increased due to the increased quantity of sand for

traction used by him on the main lines. Testifying on February 15, 1946, he said that his wind had been short for about a year and that he first felt the effects "from this trouble," "about twelve or fourteen months ago," and that he did not have any lung trouble on or about July 1, 1944.

A report made by Dr. V. L. Kelly was filed by claimant, in which it was stated that he (claimant) had "a second stage silicosis" on October 13, 1945, and that, "from his history, we gather that he has had dyspnea for the past twelve months."

No additional evidence was introduced for claimant and he rested his case. His attorney suggested that the employer have him "examined to find out the extent of his disability." Thereupon Commissioner Robinson, who was holding the hearing, said: "I will send him to our doctor, Doctor Stephenson, and let him examine him and call in anybody he wants, their reports to be considered a part of the record. What doctor do you want him examined by?" The attorney for the employed asked that he be examined by Dr. Davidson.

. It will be noted that the attorneys for defendant made no objection to the procedure, nor did they request the privilege of cross-examination. Pursuant to the agreement, claimant was examined by Doctors H. U. Stephenson, J. Morrison Hutcheson, S. G. Davidson and D. D. Talley, Jr., who filed separate reports. When these reports were received, the taking of evidence was completed. Under these circumstances, the motion to cross-examine the doctors and the motion to introduce additional testimony came too late, as the right of cross-examination had been distinctly waived.

There is little, if any, conflict in the separate reports of the four doctors. Dr. Talley, reporting on the X-ray examinations, said: "The findings are characteristic of bilateral silicosis of moderate advanced type with a certain amount of emphysematous involvement." Dr. Hutcheson said: "This man's history is that of bronchial asthma, beginning in December, 1945." Dr. Stephenson said: "It is also my opinion that this condition has developed in the last

two years and has a direct causal connection with his occupation." Dr. Davidson said: "In my opinion this (silicosis) has been present since July, 1944."

■ The only evidence tending to support claimant's contention that his malady was not susceptible of diagnosis as silicosis on July 1, 1944, is his own testimony that on or about that date he had no lung trouble and the statement of Dr. Hutcheson that his history indicated "bronchial asthma, beginning in December, 1945." This evidence is insufficient to support the contention.

According to the medical authorities, the disease is divided into first, second and third stages.

"The symptoms of uncomplicated first-stage silicosis are few and often indefinite. The man may apparently be quite well and his working capacity not noticeably impaired. Slight shortness of breath on exertion and some unproductive cough, often with recurrent colds, are the most usual symptoms. The man may have a little less ability to expand his chest than formerly, and the elasticity of the chest may be slightly impaired. The earliest specific indication of the presence of silicosis is the radiographic appearance, consisting of generalized arborization throughout both lung fields with more or less small, discrete mottling."

The symptoms of the second stage are usually as follows: "A definite shortness of breath on exertion is usually found, and pains in the chest are a frequent complaint. A dry morning cough is often present, sometimes with vomiting; and recurrent colds are more frequent. Even then the man's appearance may be healthy, but he is dyspneic on exertion, he cannot work as well as formerly, his chest expansion is noticeably decreased, the movement being sluggish and diminished in elasticity.

"The characteristic radiographic appearance is a generalized medium-sized mottling throughout both lung fields. The shadows of the individual nodules are for the most part discrete and well-defined on a background of fibrous arborization, but there may be here and there larger but limited opacities due to irregular pleural thickening or to a

localized aggregation of nodules." Report of Committee on Pneumoconiosis and Committee on Standard Practices in Compensation of Occupational Diseases of the American Public Health Association. See Bulletin 400, Bureau of Mines, United States Department of the Interior.

The same and other medical authorities state that it usually takes seven or more years of exposure to silica dust for the worker to contract the disease. A few cases have been known to develop in as short a period as one and one-half years, but these were under extreme and unusual conditions. See Bulletin 13, "National Silicosis Conference," U. S. Department of Labor; American Public Health Association Year Book 1932-33; 23 American Journal of Public Health, p. 1240, *et seq.*; Gray's Attorneys' Text Book of Medicine, 2 Ed., pp. 1060-1073; 4th Saranac Laboratory Symposium on Silicosis. The disease may have developed to such an extent that it is susceptible of diagnosis by an experienced doctor with the aid of x-ray and yet the objective symptoms may be so slight that the victim may be entirely unconscious of having contracted the disease. This being true, the testimony of the complainant, as set forth, and Dr. Hutcheson's statement that he had asthma in December, 1945, fall far short of establishing the fact that the disease was not susceptible of diagnosis on July 1, 1944.

The order of the Commission is reversed and the case will be dismissed here.

*Reversed and dismissed.*