# Richmond

## John S. Hess v. Jewell Ridge Coal Corporation.

November 22, 1948.

Record No. 3439.

Present, All the Justices.

*S. H. & Geo. C. Sutherland,* for the appellant.

*Albert G. Peery* and *Crockett & Gillespie,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

Hess asserted before the Industrial Commission a claim for compensation for silicosis, an occupational disease covered by the 1944 amendment to the Workmen's Compensation Law (Acts 1944, ch. 77, p. 97; sections 1887(2) *et seq.,* 1946 Cum. Supp. to Code, 1942, Michie).

The Commission dismissed the claim on the ground

that the claimant had silicosis on July 1, 1944, the effective date of the amendment, which, under the terms of that amendment, bars compensation.

Hess went to work for the defendant in 1930, and worked for it as motorman or brakeman in its mines from that time to February, 1946, at which time he was transferred to work outside of the mines. During his employment as motorman and brakeman he was exposed to sand dust, caused by using sand on the tracks in the operation of the motor. After his transfer to outside work in 1946 he was no longer exposed to that dust. The breathing of sand dust was the cause of the silicosis, which it was admitted he had in its first stage at the time of hearing on December 10, 1947.

In August, 1944, Dr. Brittain, the company physician, examined Hess and found he had some spitting of blood and some symptoms "that would be rather suggestive that he might have silicosis." Dr. Brittain sent him to Clinch Valley Clinic Hospital for examination. There, on August 25, 1944, his chest was X-rayed by Dr. Robinson, who sent the film for interpretation to Dr. Davidson, a qualified roentgenologist for Clinch Valley Clinic and the Bluefield Sanitarium. Dr. Brittain testified that Dr. Davidson's report was that the X-ray did not show evidence of silicosis, and he reported that fact to Hess. It was the opinion of Dr. Brittain that Hess did not have silicosis on July 1, 1944.

Dr. Robinson testified that he first saw Hess on August 25, 1944; that his chest was then X-rayed and the film sent to Dr. Davidson, who reported a normal condition. He testified that was his own opinion in the light of the history of the case; that there are other conditions responsible for spitting blood, and he did not then diagnose the trouble as silicosis, "but looking at the films today and knowing his condition today there are some areas in there which are suggestive of beginning silicosis but far from being conclusive of such."

Dr. Davidson testified that the films made August 25, 1944, were interpreted by him as being normal at that

time. "By that I mean no evidence of silicosis." He also testified that the best method of diagnosing silicosis is X-ray. Dr. Robinson said X-ray is 90 per cent of the diagnosis, but he did not think it was the last word.

These three doctors furnished all the medical testimony in the case. The claimant testified that he began to feel bad in December, 1946, and the Commission found that he experienced the first manifestation of the disease around that time. On a further examination made by Dr. Robinson on May 27, 1947, he reported to the company that "an X-ray film of the chest today shows only very little evidence of silicosis, perhaps a very early first stage silicosis.'"

The Commission found: "The exposure in the instant case was not sufficient in duration to have produced a silicosis since July 1, 1944. There was in evidence in 1944, an incipient condition not susceptible of positive diagnosis for the reason the nodulation had not progressed to the point it could be definitely ear-marked as being due to silicosis. All symptoms were present with a supporting clinical history, but positive diagnosis by X-ray was not possible until the fibrosis became so marked in the plates as to be identified as due to silicosis."

We think the fact, so found by the Commission, that the disease had not developed on July 1, 1944, to the point where it could then be diagnosed as silicosis, required a conclusion different from that reached by the Commission.

Section 2-i of the 1944 amendment, *supra*, provides that an occupational disease which an employee had on the effective date of the amendment, July 1, 1944, is not compensable; and, the amendment continues, "an employee has an occupational disease within the meaning of this law if the disease or condition has developed to such an extent that it can be diagnosed as an occupational disease."

Conversely, we think, it is necessarily to be implied from the terms of the Act that an employee has not an occupational disease, within the meaning of this law, if the disease or condition has not developed to such an extent that it can be diagnosed. Two critical dates are involved. One of them

is July 1, 1944. If the employee had on that date the occupational disease for which he now claims compensation, he cannot recover. Whether he had it on that day, "within the meaning of this law," depends on whether it had then developed to such extent that it could be diagnosed as such.

In *Noel* v. *Oakwood Smokeless Coal Corp.*, 186 Va. 97, 41 S. E. (2d) 454, and again in *Richmond* v. *Collins*, 186 Va. 298, 42 S. E. (2d) 259, we held that to be entitled to compensation under the Act the employee must prove, first, that the occupational disease has developed to such an extent that it has been or can be diagnosed as such. That element is admitted in this case. Second, he must prove, if he has an occupational disease now, that it could not have been diagnosed as such on July 1, 1944. In *The Pocahontas Corp.* v. *Richardson*, 186 Va. 367, 42 S. E. (2d) 260, we said, with reference to this second burden on the employee, that he must prove that the disease was not susceptible of diagnosis on July 1, 1944. The Commission found the fact to be here that the condition of the claimant on July 1, 1944, was "not susceptible of positive diagnosis" as silicosis.

The evidence offered by the employee to meet the first test must establish a development of the disease to the point where it can be diagnosed. That is plain. It seems equally plain that the evidence offered by him to meet the second test was meant to be measured by the same rule. The statute makes no distinction. It does not say that the presence of the disease is to be ascertained by one test when the claim is made, and by a different test at the previous date of July 1, 1944. If it had been intended that the test provided by the statute was to be applied only to ascertaining the presence of the disease when the claim was made, and not to ascertaining its presence at a time that would bar the claim, that purpose would have been stated. Only one test is provided and the employee has the disease at either date only if it can then be diagnosed.

In the *Collins Case* we spoke of the heavy burden of proof placed on the employee by the Act. The reason for that doubtless lay in the fact that silicosis, said by the

defendant here to be the main occupational disease provided for by the Act, is of slow development. We said in the *Richardson Case* that some medical authorities state that it usually takes seven or more years of exposure to silica dust for the worker to contract the disease, but under extreme and unusual conditions a few cases have been known to develop in as short a period as one and one-half years. Dr. Robinson stated in this case that it took from four to ten years in his experience for it to develop. The Act limited liability for it to the employer in whose employment the employee was last injuriously exposed. (Section 2-k). To prevent such employer from being liable for too much of the damage which others may have caused, a time and a condition of liability were selected. The time was July 1, 1944, and the condition was a non-development of the disease at that time to the point where it could then be diagnosed. If it had not so developed, then for the purpose of the law it did not then exist.

If the employee proves that his trouble can now be diagnosed as silicosis, and that it could not be so diagnosed on July 1, 1944, he is entitled to compensation. He is not entitled to compensation if he is unable to prove either. It does not make his case on the one point, or defeat it on the other, to show that subsequent development indicates he must have had the beginning of it at either time.

Here the employee did about the only thing he could have done if he had set about, soon after the passage of the amendment, to prepare himself to prove he did not have silicosis at the effective date of the Act. Within less than two months after that date he consulted a doctor—the doctor for the company in this case—who found some suspicious conditions but could not diagnose his trouble as silicosis. That doctor sent him to a hospital where the best known method was employed to determine whether he did have it. That method, X-ray, showed a normal condition and disclosed no evidence of silicosis. Hence, by the best available evidence, the claimant has proved that his disease had not then developed to the point where it could be diagnosed

as silicosis. By that evidence, coupled with the admitted fact that he had silicosis at the time of the hearing, he has sustained the burden of proof placed on him by the statute and is entitled to compensation in accordance with its terms.

The award of the Industrial Commission is reversed and the case remanded for further proceedings in accordance with this conclusion.

*Reversed and remanded.*