# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JOHN SHANAHAN v. POCAHONTAS FUEL COMPANY, INCORPORATED.

October 13, 1952.

Record No. 4020.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Hubert Peery* and *N. Clarence Smith,* for the appellant.

*Bowen & Gillespie,* for the appellee.

MILLER, J., delivered the opinion of the court.

On November 20, 1949, John Shanahan filed a claim against Pocahontas Fuel Company, Incorporated, before the Industrial Commission of Virginia for compensation because of disability due to silicosis allegedly contracted by him while in the employ of defendant.

Claimant's application for compensation was first heard by Commissioner Robinson on February 18, 1950, and it was then shown that he had suffered a "30 per cent general partial" disability caused by silicosis. On November 1, 1950, an award by that Commissioner was made in his favor for $16.74 per week for 300 weeks beginning as of August 1, 1949. If he is entitled to recover, the amount is not now in controversy.

Upon application by the defendant for a review by the full Commission, the award of November 1, 1950, was set aside and additional evidence taken. After consideration of all the evidence, a majority opinion denying any recovery (in which Commissioner Robinson did not join) was rendered by the Commission. From a final award entered February 14, 1952, which put into effect that opinion, this appeal was granted.

In the majority opinion it is made clear that the Commission's refusal to grant compensation was because it concluded that the provision of section 65-48, Code 1950, which requires that written notice be given a defendant employer by the claimant within thirty days after the employee first experiences a

distinct manifestation of an occupational disease, had not been complied with. In the opinion it is said:

"Tried by the test in the *Salyer Case* [*Salyer* v. *Clinchfield Coal Corp.*, 191 Va. 331, 61 S. E. (2d) 16], it is our conclusion that claimant failed to give notice of occupational disease within thirty days after first experiencing a distinct manifestation of silicosis in accordance with the mandate of section 65-48 of the Act."

That section follows:

"Within thirty days after claimant first experiences a distinct manifestation, or a diagnosis is made, whichever shall first occur, of an occupational disease, the employee, or someone on his behalf, shall give written notice thereof to the employer in accordance with sections 65-82 and 65-83."

It is conceded that claimant is suffering from silicosis, and the evidence conclusively proves that "he was last injuriously exposed to the hazards of the disease" while in the employ of Pocahontas Fuel Company, Inc. Thus, if he is entitled to recover, defendant is the sole employer responsible to him. Section 65-47, Code 1950.

Defendant contends that there was credible evidence to sustain the factual finding of the Commission that claimant failed to give notice within the time required. It relies upon *Salyer* v. *Clinchfield Coal Corp., supra,* wherein the phrase used in section 65-48, Code 1950, viz., "experiences a distinct manifestation * * * of an occupational disease," was construed.

We there said at page 338:

"In our opinion the employee has experienced a distinct manifestation of the disease if his affliction has so far progressed that he undergoes, has or suffers a sufficiently clear or pronounced symptom or symptoms of the malady as would apprise a reasonably prudent man of the fact that he was probably in need of medical examination or assistance."

Claimant contends that the evidence conclusively establishes that notice of claim was given by him and had by the defendant "within thirty days after he first experienced a distinct manifestation of the disease," as that phrase was construed and applied in the *Salyer Case*. But he also reminds us that by Acts of 1952, ch. 205, p. 231, the language used in section 65-48, and its meaning as defined in the *Salyer Case,* was altered and

liberalized in favor of employees. (It put into effect the view expressed by Mr. Justice Buchanan in his dissenting opinion in that case.) Claimant then insists and argues that as this amending act, by its express terms, is made applicable to occupational diseases contracted before, as well as after, its effective date, i.e., June 28, 1952, (Acts of 1952, ch. 719, p. 1306), his claim is brought under its influence. The material part of that act reads as follows:

"Within thirty days after *the employee* first experiences a *distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease,* or a diagnosis *of such disease is first communicated to him,* whichever shall first occur, *he* or someone on his behalf, shall give written notice thereof to the employer in accordance with sections 65-82 and 65-83. *The limitations imposed by this section as amended shall be applicable to occupational diseases contracted before and after the effective date hereof.*"

It is not denied that defendant was made aware on July 29, 1949, that claimant was suffering from silicosis and that on August 10, 1950, written notice to that effect was given by him. The company's defense is that the evidence is sufficient to sustain the Commission's finding that claimant first experienced a distinct manifestation of the disease at some time more than thirty days prior to July 29, 1949. It also contends that Acts of 1952, ch. 205, p. 231, is not applicable to this claim.

Acts of 1952, ch. 205, p. 231, which amended section 65-48, Code 1950, is by clear and explicit language made applicable to occupational diseases contracted before its effective date, yet it impairs no vested rights or property interests. It merely liberalizes the provisions of section 65-48 by requiring that symptoms of the malady, reasonably sufficient to apprise the employee that he has contracted the disease, be experienced by him before the period within which notice must be given the employer shall begin to run, and thus more clearly establishes and points out the thirty day limitation period during which the notice shall be given. By dealing only with circumstances that have to do with the time within which the notice must be given, it is clear that this amendment cannot and does not disturb any vested right or property interest of the defendant. It has to do

solely with the remedy, and as it expressly states that it shall apply to "occupational diseases contracted before," as well as after, its effective date, it is intended to operate retrospectively and prospectively, and it must be given that inclusive effect.

■ "That the legislation affecting matters of remedy may be retroactive in operation, if so expressed and intended, is unquestioned. If the intent so to do is made clear, retroactive effect is given." *Duffy* v. *Hartsock*, 187 Va. 406, 417, 46 S. E. (2d) 570.

■ Though the final award of the Commission rendered on February 14, 1952, was made several months before the effective date of the amendment of 1952, yet as the amending act is now operative, it should be applied in this case. That is made certain by the recent decision of *Bain* v. *Boykin*, 180 Va. 259, 23 S. E. (2d) 127, where an act which did not become effective until after the trial court had rendered final judgment was nevertheless applied and given effect. There 3 Am. Jur., Appeal and Error, sec. 1157, p. 668, is quoted with approval as follows:

" '* * * but both reason and the weight of authority point to the view that the case must be determined in the light of the law as it exists at the time of the decision by the appellate court, where the statute changing the law is intended to be retroactive in its effect; and this is true though it may result in the reversal of a judgment which was correct at the time it was rendered by the trial court. The general rule, is, of course, subject to limitation where rights have been acquired which may not be divested by legislative changes in the law. In other words, while as a general rule, the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not, if subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rules which govern, the law must be obeyed, unless it is unconstitutional.' " (180 Va. 265).

Thus it is clear that the rights of the parties must be now determined under the liberalized provision of Acts of 1952, ch. 205, p. 231. Whether or not the evidence was sufficient to sustain the Commission's conclusions under section 65-48 as it read when the Commission rendered its opinion and made the award of February 14, 1952, appealed from, need not be and is

not decided by us, for the provisions of the amending act are controlling.

The contentions of the respective litigants make it necessary to consider all of the evidence tending to establish the time when claimant first experienced "a distinct manifestation of the disease in the form of symptoms reasonably sufficient to apprise him that he" had contracted the malady.

Summarized it is as follows:

Shanahan worked in the coal mines of defendant from 1925 until 1944, except for a period of about a year in 1936 and 1937 when he was employed by the Page Coal and Coke Company. In 1944 he accepted employment with the Portsmouth Navy Yard, Portsmouth, Virginia, but in 1946 he returned to his former employment with defendant. He worked in defendant's mine at Boissevain, Va., from 1946 until the latter part of March, 1949, at which time he went to United States Coal and Coke Company, Gary, West Virginia, where he was employed until he finally ceased work in the mines on August 1, 1949.

Claimant was not subjected to silica dust during the four months that he worked in Gary, West Virginia, but the evidence discloses that during the time he served in defendant's mines prior to going to Portsmouth Navy Yard and after he returned to defendant's employ in 1946, he was subjected to and came in contact with sand dust to such an extent as to cause him to contract silicosis.

Shanahan emphatically stated that he was not aware of the fact that he had contracted the disease until August 1, 1949. Bearing upon this phase of the case, he testified that during March, 1949, while still working for defendant, he was operating a coal cutting machine "working in low coal, and my chest was hurting, and I thought that caused it. I went up there [meaning Gary, West Virginia] to get a job in higher coal. I was in a place that put me in a squeeze * * *. It was low coal and I thought that was what caused my chest to hurt, being down in low coal." Again in describing his working conditions with defendant just prior to his departure to Gary, he said:

"I was working down on the section down there that had a squeeze on it, and the coal was mashed down low and setting in that machine of a day, my chest was hurting too bad, and I

thought that it was indigestion, and I went over there in order to get in high coal. * * *''

Claimant's condition did not improve so in June or July, 1949, he had an X-ray made of his chest by the State Health Department mobile unit, and as a result he received a letter from the Tazewell county Health Department under date of July 25, 1949, directing him to report to Dr. H. A. Porter, defendant's physician, at Boissevain, Virginia. He immediately went to Dr. Porter and was by him referred to Dr. S. G. Davidson, a roentgenologist of Bluefield Sanitarium, for X-ray, examination and diagnosis. Under date of July 29, 1949, the X-ray reading by Dr. Davidson was as follows:

''Moderate diffuse fibrosis with some tendency to nodulation throughout both sides of the chest suggestive of early silicosis.''

On August 1, 1949, claimant was notified by Dr. Porter of his condition and told to cease working in the mine, which he did. He insists that this notification of August 1 was the first knowledge that he received that he was suffering from silicosis.

The evidence further discloses that claimant had been some years previously, *i.e.,* on February 12, 1945, X-rayed and the reading of that X-ray was:

''Slight diffuse increase in the lung markings throughout both sides of the chest. No tuberculosis.''

This X-ray of February 12, 1945, was available to Dr. Davidson for study and interpretation when he made the X-ray of July 29, 1949, ''suggestive of early silicosis,'' and yet the evidence does not disclose that claimant ever saw or was informed of what the X-ray of 1945 disclosed. In fact, he states that he never knew or was informed of the result of that X-ray.

Sometime after claimant had given notice to defendant and filed his application for compensation with the Commission, he was thoroughly examined at Bluefield Sanitarium by Dr. Davidson and other physicians to determine ''the presence or absence of silicosis, and if present, to what state it has advanced.'' In Dr. Davidson's report of February 15, 1950, which was made after this thorough examination was concluded, it is stated:

''This man's chief complaint is pain in the chest and dyspnea. He states he was in good health until May 1949 when he noted gradual onset of dyspnea on exertion which has remained sta-

tionary to the present. About one year ago he began to note a cough at night and on exertion. Later he developed sticking pain about the lower chest when he would use his arms. He lost about four pounds in weight, but his appetite is good. Most of his cough occurs at night. Sleeps on two pillows. Has spit up blood on a few occasions. He has no temperature, but occasional night sweats.''

After some further observation relative to the length of time that claimant worked in the mines, his weight, blood pressure and other matter bearing upon his physical condition, Dr. Davidson gives his conclusion as follows:

''This man has a second stage silicosis with decreased capacity to do work. He has a 30% general disability due to the disease silicosis. He has had sufficient exposure in the state of Virginia to silicon dioxide dust to have produced the disease. It is my definite opinion that the disease silicosis was susceptible to diagnosis prior to July 1, 1944.''

It thus appears from the evidence that the only symptoms experienced by claimant that would tend to apprise him of the fact that he had contracted silicosis was that he had at some time during the early months of 1949 begun to cough at night and after exertion, and had some discomfort and pain about his chest. This, however, he attributed to the fact that he was working in low coal and in a cramped position. With a view to alleviate this pain, which he did not attribute to any disease but to the work that he was doing, he secured employment in another mine at Gary, West Virginia. When he did not improve, he sought medical examination and advice within a reasonable time by securing an X-ray by the mobile unit in June or July, 1949. The fact that his condition may have been, or was, susceptible of diagnosis as silicosis at that time or even prior to July 1, 1944, by no means establishes the fact that he had experienced ''symptoms reasonably sufficient to apprise him that he had contracted the disease.''

In *Pocahontas Corp.* v. *Richardson,* 186 Va. 367, 371, 42 S. E. (2d) 260, Mr. Justice Hudgins, now Chief Justice, said:

''* * * The disease may have developed to such an extent that it is susceptible of diagnosis by an experienced doctor with the aid of x-ray and yet the objective symptoms may be so slight

that the victim may be entirely unconscious of having contracted the disease. * * *"

It is significant that the interpretation of the X-ray of February 12, 1945, did not mention silicosis, and the report of July 29, 1949, though reciting certain circumstances which pointed to the existence of the disease at that time, concluded by saying that the X-ray reading was "suggestive of early silicosis."

The facts of this case are similar to those dealt with in *Pocahontas Fuel Co. v. Godbey,* 192 Va. 845, 855, 66 S. E. (2d) 859, and we there said:

"When appellee entered the corporation's employ in 1946, he was examined and found to be apparently in good health. In the summer of 1948, when he was X-rayed by the mobile unit, though he was instructed to report to a physician and was then experiencing some weakness and shortness of breath, it does not appear that there were then found any pronounced symptoms of silicosis. On the contrary, he was during the fall of that year treated for tuberculosis, and though repeated examinations and X-rays were made, it is not shown that any physician concluded that he had silicosis until on or about January 5, 1949. Certainly, until about that time no diagnosis of silicosis had been made nor had appellee been informed that he was suffering from that disease. * * *"

The evidence was fully developed at the two hearings had by the Commission. The cause is now before us for final decision upon all of that evidence which is to be weighed, and the rights of the parties determined under the provisions of section 65-48, as amended by the Acts of 1952. Upon application of the amending act, we find the evidence insufficient to prove that Shanahan failed to give notice to the defendant within the time required. On the contrary, it shows that he did not experience a distinct manifestation of the disease in the form of symptoms reasonably sufficient to apprise him that he had contracted the disease at any time before he was advised of the results of the X-ray of July 29, 1949, and on that date the company was made aware of his condition. He also gave written notice to the defendant on August 10, 1949, as required by sections 65-82 and 65-83, Code 1950, and thus full compliance with the statutes requiring notice was had.

For the reasons stated, the order of the Commission of February 14, 1952, is reversed, and this cause is remanded to the Commission, which shall re-instate the award made by Commissioner Robinson on November 1, 1950, and allow to counsel for petitioner a reasonable fee for his services before the Commission and in this court.

*Reversed and remanded.*