COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia


MARCUS ABRAMS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0078-14-4                      JUDGE ROSSIE D. ALSTON, JR.
                                                    DECEMBER 16, 2014

WASHINGTON METROPOLITAN AREA
 TRANSIT AUTHORITY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Andrew S. Kasmer (Law Offices of Andrew S. Kasmer, on brief),
        for appellant.

        Mark Dho, Associate General Counsel (Office of General Counsel,
        on brief), for appellee.


        Marcus Abrams ("claimant") challenges the commission's decision to terminate his

award of temporary total disability benefits. Claimant contends that the commission erred in

ruling that Washington Metropolitan Area Transit Authority ("employer") carried its burden of

proving that claimant could return to full-time work. For the reasons that follow, we affirm the

commission.

BACKGROUND[1]

        On appeal from the commission, "we view the evidence in the light most favorable to the

party prevailing below." Tomes v. James City Fire, 39 Va. App. 424, 429-30, 573 S.E.2d 312,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

315 (2002) (citing R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990)).

While working as a "cleaner shifter" for employer, claimant was injured when a bus he was driving was struck by another vehicle. Claimant suffered injuries to his neck, back, and left knee, which employer accepted as compensable. The commission has awarded claimant various periods of temporary total disability benefits, the most recent of which awarded claimant temporary total disability benefits from March 1, 2011 and continuing.

Between February 14, 2011 and February 1, 2013, claimant treated primarily with Dr. Scott Schimpff. During that time, claimant complained to Dr. Schimpff of "constant" pain in his "low back, mid back, and bilateral lower [extremities]," which claimant described as "sharp, burning, throbbing, shooting, aching, and stabbing." At all relevant times, Dr. Schimpff recommended that claimant remain out of work. The work releases provided to claimant by Dr. Schimpff were often unaccompanied by treatment notes addressing claimant's condition.

On March 23, 2011, claimant treated with Dr. David P. Sokolow. During his examination, claimant demonstrated "extremely severe range of motion restriction of the lumbar spine and diffuse spasm/tenderness to palpation." X-rays taken during the examination revealed no bony abnormalities. Dr. Sokolow assessed claimant with "severely symptomatic lumbar radicular pain, or an incompletely resolved severe lumbosacral musculoligamentous strain."

On June 8, 2012, claimant underwent a bilateral lower extremity EMG, "which showed multilevel acute and chronic EMG changes throughout [claimant's] lower extremities." The EMG showed "no evidence of polyneuropathy, myopathy, or plexopathy." Dr. Schimpff reviewed the EMG results and found that he could not rule out the possibility of a motor neuron disease.

On November 2, 2012, claimant again treated with Dr. Schimpff, who noted that claimant "continue[d] to complain of debilitating back and lower extremity pain of unknown etiology." Dr. Schimpff further noted that x-rays of claimant's left knee, lumbar, and cervical spine taken on July 10, 2010 were all within normal limits. Dr. Schimpff also reviewed MRIs of claimant's cervical and lumbar spine (taken on July 10, 2012, and January 7, 2011, respectively), which were within normal limits, as well as an MRI of claimant's thoracic spine, which showed "minimal degenerative" changes.

On April 2, 2013, claimant saw Dr. Joshua Ammerman for a neurosurgical consultation. Dr. Ammerman examined claimant and noted that claimant exhibited "pain-limited weakness in [his] lower extremities," as well as "impressive myofascial tenderness throughout [claimant's] posterior musculature," to such an extent that claimant "jump[ed] away" from "simple contact with the skin." Nevertheless, Dr. Ammerman found "no explanation for [claimant's] symptoms on a spinal basis." Dr. Ammerman encouraged claimant to see a neurologist.

Claimant treated with Dr. Julio Gonzalez, a neurologist and pain management specialist, shortly thereafter. Dr. Gonzalez noted that claimant exhibited tenderness throughout his back and the "collateral ligaments of the left knee." Dr. Gonzalez noted that he reviewed several x-rays of claimant's left knee and spine, all of which showed no "gross abnormalities." Dr. Gonzalez diagnosed claimant with chronic traumatic lumbar radiculitis, whiplash injury, and severe left knee pain, and recommended that claimant remain off work until further notice.

The following month, claimant again treated with Dr. Gonzalez. Dr. Gonzalez noted only claimant's subjective complaints of pain in his lumbar area, extremities, and neck. Dr. Gonzalez continued to hold claimant out of work.

Claimant was examined by an independent medical examiner on two occasions (September 14, 2011, and September 26, 2012). On both occasions, the independent medical

examiner, Dr. Andre Eglevsky, concluded that claimant was fully healed from his work-related injury and capable of returning to full-duty status. Dr. Eglevsky based his conclusion on his physical examination of claimant, his review of claimant's medical record, and his review of an "[a]nalysis for a shifter/cleaner for Washington Metro Area Transit Authority," as well as claimant's description of his job duties.

Dr. Eglevsky opined that claimant's then-present symptoms were not supported by the objective findings in the record and that claimant's complaints of pain were unrelated to his July 2010 work accident. Specifically, Dr. Eglevsky reported that claimant's examination

> reveal[ed] a very highly exaggerated examination with no objective findings, only significant subjective findings. This was noted by numerous physicians in the past. [Claimant's] studies were all unremarkable except for the EMGs. The EMG findings suggest that there may be a basic nerve disease process going on here. None of the findings can be explained by any of the tests such as MRIs and physical examination.

Although claimant's EMG demonstrated abnormal findings, Dr. Eglevsky concluded that the abnormal EMG was not related to claimant's work accident and "could represent a systemic disease." Dr. Eglevsky concluded that claimant's "normal" objective findings were inconsistent with the "exaggerated physical findings [in claimant's medical record] such as marked loss of motion of [claimant's] spine [and] extreme tenderness to light touch to the skin."

In his initial report, Dr. Eglevsky further concluded that claimant could return in "full capacity" to his work as a "cleaner/shifter." Dr. Eglevsky based this finding on his review of an "[a]nalysis for a shifter/cleaner for Washington Metro Area Transit Authority," as well as claimant's description of his job duties. According to Dr. Eglevsky, claimant indicated that a cleaner/shifter "basically clean[s] buses" but also "move[s] [the buses] around and . . . [performs] some mechanical work." In his more recent report, Dr. Eglevsky stated that claimant was capable of working "without any restrictions."

- 4 -

On June 12, 2013, a deputy commissioner held a hearing on employer's application to terminate claimant's award of temporary total disability benefits. During the hearing, claimant testified about the injuries he sustained while working for employer. He described experiencing shooting pain in his back and numbness in his legs, which made walking difficult. Claimant testified that his pain prevented him from returning to his pre-injury employment, which he described as requiring "[a] lot of prolonged standing, walking, jumping up and off buses, bending, twisting, sweeping, [and] lifting up to 100 pounds." Claimant further testified that Dr. Eglevksy did not ask him his job requirements.

Following the hearing, the deputy commissioner entered an order terminating claimant's award of temporary total disability benefits. The deputy commissioner found that employer had carried its burden of proving that claimant had been returned to full-duty status. In reaching that decision, the deputy commissioner "found the opinion of Dr. Eglevsky most persuasive and supported by the entire medical record," particularly claimant's diagnostic testing, "[v]irtually all of [which] has been normal." The deputy commissioner also explained that although "the opinion of [a] treating physician is normally entitled to considerable weight," there were "very few records from Dr. Schimpff that explain[ed] or support[ed] his continuing to hold . . . claimant out of work through May 2013, and even [Dr. Schimpff] noted . . . that . . . claimant's debilitating back and lower extremity pain was of unknown etiology." The deputy commissioner also gave "little weight" to the opinion of Dr. Gonzalez, explaining that Dr. Gonzalez only treated claimant twice and "it [was] not apparent [from the record] that he had any of . . . claimant's prior records to review."

On review, the commission affirmed the deputy commissioner and adopted the deputy commissioner's findings of fact and conclusions of law as its own. Commissioner Marshall

dissented, finding that employer "did not meet [its] burden of proof that . . . claimant was released to pre-injury work."

This appeal followed.

## ANALYSIS

On appeal from the commission, claimant contends that the commission erred in giving great weight to the opinion of Dr. Eglevsky and finding that employer carried its burden of proving that claimant was released to full-duty status.[2]

"[A] question raised by conflicting medical opinion is a question of fact," binding upon this Court on appeal. Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985) (stating that "'it is our duty to determine whether credible evidence supports the [c]ommission's finding . . . and, if such evidence exists, to sustain the finding'" (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983))). When medical expert opinions conflict, "it is for the [c]ommission to determine the probative weight to be accorded such evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986); see Williams v. Fuqua, 199 Va. 709, 714, 101 S.E.2d 562, 566-67 (1958) (stating that although "great weight should be given to the testimony of [a treating] physician, his opinion is not binding upon the [c]ommission"). The commission's resolution of conflicting medical opinions will be upheld on appeal if supported by credible evidence. See Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 238, 734 S.E.2d 683, 688 (2012) (citing Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)).

---

[2] In the argument section of his brief, claimant includes an additional issue, which states that "Dr. Eglevsky's opinion that . . . claimant was capable of returning to work by November 2010, with regard to the July 9, 2010 motor vehicle accident is barred by res judicata." We will not consider this argument because it was not raised as an assignment of error. Rule 5A:20; see also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (stating that because "an issue [was] not expressly stated among the [assignments of error] . . . we, therefore, decline to consider [it] on appeal").

In its role as fact finder, the commission weighed the medical evidence and articulated its reasoning for giving greater weight to the opinion of Dr. Eglevsky than to the opinions of claimant's treating physicians.[3] The commission explained in its opinion that "[v]irtually all of claimant's diagnostic testing [had] been normal," which supported Dr. Eglevsky's opinion that claimant "suffered only soft tissue injuries as a result of [his] accident." While acknowledging that a treating physician's opinion is normally entitled to considerable weight, the commission noted that Dr. Schimpff provided "very few records" that supported his decision to hold claimant out of work and that he expressed doubts concerning the cause of claimant's back and lower extremity pain. The commission also articulated its decision to attribute little weight to Dr. Gonzalez's opinion, explaining that Dr. Gonzalez had only treated claimant twice in 2013 and noting that it was unclear from Dr. Gonzalez's notes that "he had . . . claimant's prior records to review."

The medical record supports the commission's factual findings. In addition to Dr. Eglevsky, numerous physicians noted that claimant's diagnostic studies were unremarkable. Indeed, Dr. Schimpff noted that x-rays and MRIs of claimant's cervical and lumbar spine were all within normal limits and an MRI of claimant's thoracic spine showed only minimal

---

[3] In support of his of argument that the commission erred in giving great weight to the opinion of Dr. Eglevsky, claimant contends "the [c]ommission failed to note that Dr. Eglevsky's opinion was based upon medical records only through August 2012." According to claimant, because the medical record includes more recent medical evidence, Dr. Eglevsky based his opinion upon "incomplete medical records," which renders his opinion unpersuasive.

That new medical evidence was added to claimant's medical record *after* Dr. Eglevsky prepared his reports says nothing about the completeness of the medical record *before* Dr. Eglevsky at the time he prepared his report. Although phrased as a challenge to the completeness of the medical record before Dr. Eglevsky, claimant's argument raises an issue of timeliness. As we have previously noted, timeliness "is simply one variable among many that may influence a fact finder's decision to attribute different weight to different evidence in a particular case." Donovan v. UPS, 63 Va. App. 438, 446, 758 S.E.2d 99, 103 (2014). Here, notwithstanding more recent medical evidence in the record, the commission attributed great weight to the opinion of Dr. Eglevsky. For the reasons addressed in the body of the opinion, we defer to the commission's assessment.

degenerative change. Dr. Ammerman reviewed these same diagnostic studies and found "no explanation for [claimant's] symptoms on a spinal basis." The only other remarkable diagnostic study was an abnormal EMG that showed "acute and chronic EMG changes throughout [claimant's] lower extremities and lumbar paraspinals." But neither of claimant's treating physicians attributed claimant's "acute and chronic EMG changes" to his work injury. In fact, Dr. Schimpff merely noted that he could not "rule out motor neuron disease," which was consistent with Dr. Eglevsky's opinion that "[t]he EMG findings suggest[ed] . . . a basic nerve disease process" that was not related to claimant's work accident. Finally, while Dr. Gonzalez's treatment notes indicate that he reviewed x-rays of claimant's knee and cervical spine, there is no indication that he reviewed (or had available to him to review) the numerous other diagnostic studies available at that time, including the two most relevant diagnostic studies (the EMG or thoracic MRI) in claimant's medical record.[4] In light of this evidence and the commission's reasoning, the commission was entitled to give great weight to Dr. Eglevsky's medical opinion that claimant had completely healed from the injuries he suffered as a result of his work accident.

Claimant also contends that the opinion of Dr. Eglevsky does not provide credible evidence to support the commission's finding that claimant could return to full-duty status because Dr. Eglevsky was not fully informed about claimant job duties. We disagree.

Whether Dr. Eglevsky was familiar with claimant's job duties is insignificant. In his September 26, 2012 report, Dr. Eglevsky opined that claimant's "work capacity [was] full without restrictions." In other words, Dr. Eglevsky released claimant to perform *any* task.

_____

[4] Claimant contends that Dr. Gonzalez's records were complete and asserts that the commission cannot base its factual findings on "assumptions not found in the record." It is worth noting that the commission noted only that it was not "apparent" whether Dr. Gonzalez had access to claimant's prior medical record. The commission did not assume from Dr. Gonzalez's silence that his records were incomplete. Rather, the commission assessed Dr. Gonzalez's expert opinion in view of the evidence included in his report, which only underscored the commission's main conclusion that the record lacked "objective findings of a cause for claimant's complaints."

Accordingly, employer was not required to show that Dr. Eglevsky was familiar with the physical requirements of claimant's job or the type of physical limitations that would prohibit its performance. See Fingles Co. v. Tatterson, 22 Va. App. 638, 642, 472 S.E.2d 646, 648 (1996) (stating that where the physician "does not suggest any physical limitations on a claimant, the employer need not also show that the physician was familiar with the physical requirements of the job and the type of physical limitations which would prohibit its performance" (citing Mace v. Merchants Delivery Moving & Storage, 221 Va. 401, 403, 270 S.E.2d 717, 719 (1980))); see also Sloas v. Babcock & Wilson Constr. Co., Rec. No. 0596-95-3, 1996 Va. App. LEXIS 516, at *3 (July 23, 1996) (stating that the treating physician necessarily released the claimant to perform any task, including his pre-injury employment, because the treating physician released the claimant to work without restriction).[5]  Under these circumstances, credible evidence supports the commission's finding that claimant could return to his pre-injury employment.

For the foregoing reasons, we affirm the decision of the commission.

Affirmed.

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 351, 735 S.E.2d 255, 258 (2012) (citing Rule 5A:1(f)).